**UNITED STATES of America, Plaintiff,**

**v.**

**Louis Dean CONLEY and Mitchell Dewayne Pemberton, Defendants.**

**No. 86–CR–53–C.**

United States District Court, N.D. Oklahoma.

April 24, 1987.

Kenneth P. Snoke, Asst. U.S. Atty., Tulsa, Okl., for plaintiff.

L.G. Hawkins, Cecil G. Drummond, Tulsa, Okl., for defendants.

## ORDER

H. DALE COOK, Chief Judge.

Before the Court is the motion brought by defendant Mitchell Dewayne Pemberton to dismiss with prejudice Counts I, II, III, VI, and VII of the Indictment.

Pemberton was indicted on May 7, 1986 within this judicial district, along with co-defendant Louis Dean Conley. He was

charged with six separate violations of the federal narcotics laws. Assisting Pemberton was his court-appointed attorney, J. Steven Welch, who was present during arraignment, negotiations with the Government concerning a plea agreement, and at the change of plea hearing. On December 15, 1986, Pemberton was before the Court and presented his petition to enter a plea of guilty. The petition recites that Pemberton agreed to plead guilty as to Count IV of the Indictment and that the Government agreed to dismiss the remaining counts.

Kenneth P. Snoke is the Assistant United States Attorney assigned to this case. However, Mr. Snoke was unavailable to attend the change of plea hearing; therefore, another Assistant United States Attorney, Ben Baker, was representing the Government. Mr. Baker was not involved in the plea negotiations nor familiar with the terms of the agreement.

There was not a separate written plea agreement, other than the petition to enter plea of guilty presented by the defendant. It is a practice of this Court that prior to presentation of the petition to the Court the Assistant United States Attorney in charge of the case is to examine the defendant's petition for completeness and accuracy. Further, the defendant is to state in the petition the agreement he has entered into with the Government, sign the petition under oath, and attest to its accuracy in open court.

It is also the customary practice of this Court to inquire of the Assistant United States Attorney present at the hearing, the defendant's attorney, and the defendant himself, as to whether there has been plea bargaining and each party's understanding of its terms.

Upon questioning on December 15, 1986, Assistant United States Attorney Ben Baker advised the Court there had been plea bargaining in the case and stated:

... the Government has agreed with counsel if the Court accepts the tendered plea here today to dismiss the remaining counts, or move dismissal of them at the time of sentencing. I think those would be Counts I, II, III, VI and VII in the Indictment.

Defendant's attorney, Mr. Welch, confirmed Mr. Baker's statement and thereafter the Court inquired of Mr. Pemberton:

The Court: Mr. Pemberton, I'm told that the Government has agreed that in the event you freely and voluntarily enter a plea of guilty to Count IV, and are found guilty, at time of sentencing the Government will dismiss the remaining counts of this Indictment that pertain to you, but no other agreements or promises or suggestions have been made. Now, is that correct? Is that your understanding?

The Defendant: Yes, sir.

At the defendant's sentencing on February 24, 1987, a dispute arose between the Government and the defendant concerning the terms of defendant's plea agreement. The Government alleged that the defendant had agreed as part of his plea agreement to cooperate with the Government and to testify against his co-defendant. The Government further alleged that defendant had breached this agreement and that the Government was therefore moving to withdraw the plea agreement with this defendant whereby Counts I, II, III, VI, and VII would be dismissed at sentencing. The defendant denied that he had made any agreement to testify or assist the Government prior to or as part of this plea agreement entered on December 15, 1986. The Court then ordered the defendant to go to trial on Counts I, II, III, VI, and VII, and postponed sentencing of defendant on Count IV until after defendant's trial on the remaining counts. The Court also allowed defendant's counsel, Mr. Welch, to withdraw, and appointed the Federal Public Defender's Office to represent the defendant.

Defendant now moves for specific performance of the terms of the plea agreement approved by the Court on December 15, 1986, and asks this Court to dismiss with prejudice Counts I, II, III, VI, and VII against him, and to set a date certain for his sentencing on Count IV of the Indictment.

**38**

The issue before the Court is whether on December 15, 1986 a binding plea agreement was expressed by the parties and accepted and approved by the Court. To resolve this issue, the Court must determine when a binding plea agreement is entered into between the Government and a criminal defendant. As the language in the leading case makes clear, "[a] plea bargain is contractual in nature." *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Prior to the court hearing, Government and defense attorney discuss the possibilities of a plea. The bargaining, as in any other contractual setting, generally involves one or several offers by the Government which are either accepted or rejected by the defendant. Once the defendant has accepted Government's offer, a change of plea hearing is set by the court. Defendant prepares the petition to enter a plea of guilty, and it is to be examined by the Government for accuracy of its contents. Such a procedure insures that the petition encompasses the parties' agreement. As a safeguard, the court inquires separately of each party to verify the plea agreement. The defendant is thereafter administered an oath in which he swears to the accuracy of the petition. After the court accepts and approves defendant's petition, the plea agreement is consummated and is binding on the parties. *Any* variation in or additions to the terms contained in the petition must be brought to the court's attention at the hearing, or such omitted or varied terms do not form part of the agreement.

This procedure is necessary to avoid uncertainties, prevent confusion, insure against breaches of the plea agreement, and to safeguard fundamental rights of criminal defendants. The case before the Court involves the unfortunate situation where one uninformed prosecutor stood in the place of the prosecutor who negotiated the plea, during the most critical phase of the procedure. As the Supreme Court most aptly stated:

> The staff lawyers in a prosecutor's office have the burden of "letting the left hand know what the right hand is doing" or has done.

*Santobello v. New York, supra* at 262, 92 S.Ct. at 499.

The staff of the United States Attorney's office is a unit and each member is imputed with the knowledge of the commitments made by any other members. If this responsibility is evaded in any manner, it could result in manifest injustice to the criminal defendant. *See, Santobello, supra* at 263, 92 S.Ct. at 499 (Justice Douglas concurring). Full disclosure of *all* the terms prior to the court's determination of whether to accept a guilty plea is essential for the judge to make "the constitutionally required determination that a defendant's guilty plea is truly voluntary". *United States v. Blackner*, 721 F.2d 703, 708 (10th Cir.1983). The Supreme Court has opined that Rule 11 F.R.Cr.P. requires the court to produce a complete record at the time the plea is entered to establish the factors relevant to a determination that the plea was entered voluntarily. *McCarthy v. United States*, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). The Tenth Circuit, in emphasizing this requirement, has said "there is no standard short of requiring total disclosure of all material details of plea agreements that can reliably guarantee that guilty pleas are knowing and voluntary and fully understood by the parties themselves." *United States v. Blackner, supra* at 708.

In this instance, there were no ambiguous terms in the agreement. Each party had the full opportunity in open Court to express the agreement. In determining whether the plea agreement was breached, the Court is to look to what was reasonably understood by the defendant when he entered his guilty plea. *United States v. Travis*, 735 F.2d 1129, 1132 (9th Cir.1984). This is evidenced by the petition he affirmed before the Court. At that time, parties are required to fully inform the trial court of all the promises and conditions that have been made in connection with the plea, not only those which they happen to consider important. *United States v. Blackner, supra* at 708. Despite the explicit inquiries by the Court, Government subsequently contends additional

terms were part of the agreement. This contention cannot and will not be permitted by the Court. Government will be held to the literal terms of the plea agreement. *United States v. Travis, supra* at 1132.

In 1935, the Supreme Court concisely expressed the United States Attorney's obligations which still hold true today:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

The mere fact the prosecutor claims his failure to disclose to the Court his understanding of the plea agreement was through inadvertence or negligence does not warrant this Court's setting the agreement aside as ambiguous. Rather, the Court will enforce the agreement as presented in open Court, and judicially determine it binding on the parties. "The heavy workload may well explain these episodes, but it does not excuse them." *Santobello, supra* at 260, 92 S.Ct. at 498.

Accordingly, it is the Order of the Court that the motion to dismiss with prejudice Counts I, II, III, VI and VII of the Indictment brought by the defendant, Mitchell Dewayne Pemberton is hereby GRANTED. Pursuant to his plea of guilty as to Count IV of the Indictment, accepted by the Court on December 15, 1986, the defendant Mitchell Dewayne Pemberton is set for sentencing as to Count IV on the 11th day of May, 1987 at 1:30 p.m.